JENNIFER A. FORNETTI, ESQ. (NBN 7644)
**THE BOURASSA LAW GROUP**
2350 W. Charleston Blvd., Suite 100
Las Vegas, Nevada 89102
Telephone:   (702) 851-2180
Facsimile:    (702) 851-2189
Email:         *jfornetti@blgwins.com*

NICHOLAS A. COLELLA (*pro hac vice*)
**LYNCH CARPENTER LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, Pennsylvania 15222
Telephone:   (412) 322-9243
Email:         *nickc@lcllp.com*

*Co-Interim Counsel for Plaintiffs and the Class*

[additional counsel in signature block]

**UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA**

| | |
|---|---|
| IN RE HANKINS PLASTIC SURGERY ASSOCIATES, P. C. dba HANKINS & SOHN PLASTIC SURGERY ASSOCIATES<br><br>This Document Relates to: All Actions | Case No.: 2:23-cv-00824-RFB-DJA<br><br>[PROPOSED] **STIPULATED PROTOCOL ON THE DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |

Plaintiffs Jennifer Tausinga, Alysia Wrenn, Olga Romashova, and Caroline Aurora (collectively "Plaintiffs") on behalf of themselves and all other similarly situated, by and through co-interim counsel of record, Jennifer A. Fornetti of The Bourassa Law Group and Nicholas A. Colella of Lynch Carpenter LLP and Plaintiffs' steering committee, Raina Borrelli of Turke & Stauss LLP, Ramzy Ladah of Ladah Law Firm, and Clark Seegmiller and Jonathan B. Lee of Richard Harris Law Firm, and Defendants Hankins & Sohn Plastic Surgery Associates, P.C. dba Hankins & Sohn Plastic Surgery Associates ("Defendant") by and through its counsel of record, SCHNITZER JOHNSON & WATSON, CHTD., enter into this stipulated protocol on the discovery of electronically stored information. Accordingly, the Parties respectfully request that the following stipulated protocol be entered by the Court:

**1) PURPOSE**

This Stipulated Order will govern discovery of Electronically Stored Information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, the Local Civil Rules of the United States District Court for the District of Nevada, and any other applicable orders and rules.

**2) GENERAL PRINCIPLES**

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter.

Nothing in this Stipulated Order shall be interpreted to require disclosure of information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity. Except as expressly provided herein, the parties do not waive any objections as to the production, discoverability, authenticity, admissibility, or confidentiality of any particular documents or ESI.

This Stipulated Order may be modified in the Court's discretion or by agreement of the parties for good cause shown. If the parties cannot resolve their disagreements regarding these modifications, the parties shall seek a resolution pursuant to the Federal Rules of Civil Procedure governing discovery disputes.

This Stipulated Order may only apply to the parties in this matter.

**3) DEFINITIONS**

a. "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rules 26 and 34 of the Federal Rules of Civil Procedure. The term "Document" shall include Hard-Copy Documents, Electronic Documents, and ESI, as defined herein.

b. "Electronic Document or Data" means Documents or Data existing in electronic form at the time of collection, including but not limited to: e-mail or other means of electronic communications, word processing files (e.g. Microsoft Word), computer presentations (e.g. PowerPoint slides), spreadsheets (e.g. Excel), image files (e.g. PDF), chat applications, text messages, ephemeral data sources, and hyperlinked/ linked documents and files.

c. "Hard-Copy Document" means Documents existing in paper form at the time of collection.

d.  "Native Format" means and refers to the format of ESI in which it was generated and/or as used by the producing party in the usual course of its business and in its regularly conducted activities. For example, the native format of an Excel workbook is .xls or .xlsx.

e.  "Near-Native Format" means and refers to the format of ESI that preserves the functionality, searchability, and integrity of a Native Format item when it is infeasible or unduly burdensome to produce the item in Native Format, including where redactions to an otherwise Native Format item are made. For example, an MBOX is a suitable near-native format for production of Gmail, an Excel spreadsheet is a suitable near-native format for production of Google Sheets, and EML or MSG files may be suitable near-native formats for production of individual e-mail messages. Static images are not near-native formats for production of any form except Hard-Copy Documents.

f.  "Metadata" means (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage, and/or validity of the electronic file; (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system, (iii) information, such as Bates numbers, created during the course of processing documents or ESI for production, and (iv) information collected during the course of collecting documents or ESI, such as file names, file paths, system dates, name of the media device on which it was stored, or the custodian or noncustodial data source from which it was collected.

g.  "Optical Character Recognition" or "OCR" means the process of recognizing and creating a file containing visible text within an image.

4)  **PRESERVATION**

The parties have discussed their preservation obligations, as expressed in Fed. R. Civ. P. 37(e), and preservation needs, and agree that preservation of potentially relevant ESI will be reasonable and proportionate pursuant to Fed. R. Civ. P. 26(b) and the Court's Amended Stipulated Discovery Plan and Scheduling Order ("Stipulated Discovery Plan"). *See* ECF No. 48. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

1.      The parties shall abide by their common law obligations to preserve relevant documents and information;

2.      Pursuant to section 5 below, the parties will exchange a list of the types of ESI they believe should be preserved and the custodians, or general job titles or descriptions of custodians, for whom they believe ESI should be preserved, e.g., "HR head," "scientist," and "marketing manager." The parties may add or remove proposed custodians;

3.      The parties will meet and confer regarding the custodians for whom ESI will be preserved;

4.      The parties will identify any data sources that are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B) and whether ESI from these sources will be preserved but not searched, reviewed, or produced.

**5)  ESI DISCLOSURES**

Prior to conducting searches for ESI in response to discovery requests pursuant to Phase I or II of discovery in compliance with the Stipulated Discovery Plan, and in conjunction with negotiations on discovery requests, each party shall disclose within a reasonable amount of time and within the scope of Phase I and Phase II, once it commences:

1.      Custodians. The names, titles, and roles of custodians most likely to have discoverable ESI in their possession, custody, or control. The custodians shall be identified by name, title, connection to the instant litigation, and the type of information under the custodian's control.

2.      Non-custodial Data Sources. A list of non-custodial data sources (e.g., shared drives, servers, internal messaging applications), if any, likely to contain discoverable ESI that is known to the disclosing party.

3.      Third-Party Data Sources. A list of third-party data sources, if any, likely to contain discoverable ESI (e.g., third-party email providers, mobile device providers, cloud storage, messaging providers) and, for each such source, the extent to which a party is (or is not) able to preserve information stored in the third-party data source that is known to the disclosing party.

4.      Custodial Data Sources.  A list of sources of custodial documents and ESI including local hard drives, network home or personal file shares, removable storage, email, removable storage media,

online storage such as Dropbox or Google Drive, phones, tablets, and physical files that are likely to contain discoverable ESI that is known to the disclosing party.

     5.     Inaccessible Data. A list of data sources, if any, likely to contain discoverable ESI (by type, date, custodian, electronic system, or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B) and the Stipulated Discovery Plan.

     6.     Documents and ESI from identified custodial and non-custodial data sources will be preserved pending identification of data to be produced in this litigation.

     7.     Parties have a continuing obligation to identify any other custodial and non-custodial data sources likely to contain discoverable ESI and preserve them.

**6)     SEARCH METHODOLOGY**

The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery, such as whether to use search terms.

If search terms are requested by the Requesting Party, the parties must meet and confer in good faith regarding search terms and queries, file types and date restrictions, data sources and custodians. The parties shall continue to cooperate in revising the appropriateness of the search methodology, such as by the producing party providing hit count reports. The producing party may identify each search term or query returning overbroad results demonstrating the overbroad results and provide a counter proposal as to revised searches or queries. In the event the parties are unable to reach agreement on search terms, including as to the breadth of proportional document review efforts, the parties shall consider in good faith the possibility of a phased approach to document review and production efforts.

This Stipulation does not preclude a Requesting Party from seeking information pertaining to a Producing Party's network design, types of databases, database dictionaries, access control lists and security access logs and rights of individuals to access systems and specific files and applications, the ESI document retention policy, organizational chart for information systems personnel, or the backup and systems recovery routines, including, but not limited to, tape rotation and destruction/overwrite policy, as long as the request complies with Fed. R. Civ. P. 26(b) and the Stipulated Discovery Plan.

If a Party elects to use technology-assisted review or other advanced technology-based analytics to cull unstructured ESI, the parties will meet and confer regarding the parameters that will apply.

To the extent a response to discovery requires production of discoverable ESI contained in a structured database, the Parties shall meet and confer in an attempt to agree upon an appropriate form of production and potential methods of generating a report in a reasonably usable and exportable electronic file format for review by the Requesting Party. Upon review of the exported electronic file(s), the Requesting Party may make reasonable requests for additional information to explain the database schema, codes, abbreviations, and different report formats or to request specific data from identified fields. A potential approach to discovery involving structured database materials may involve the parties meeting and conferring upon a set of queries to be made for discoverable information within the database.

A producing party may always conduct a manual review for responsiveness and privilege, whether or not search terms or technology-aided review is also utilized.

**7)   PRODUCTION FORMATS**

   *Principles applicable to all productions of ESI and hard-copy documents*

   a.   The parties agree to make rolling productions.

   b.   Documents will be produced to the requesting party in the formats addressed below under "Principles applicable to ESI" and "Principles applicable to hard-copy documents."

   c.   Each document file shall be named with a unique number (Bates Number). File names should not be more than twenty characters long or contain spaces.

   d.   Entire Document families must be produced, even if only the parent email or an attachment to an email is responsive. Documents and files included in electronic documents (e.g., emails, chats) as hyperlinks or links will be produced as a parent-child relationship.

   e.   Document level extracted text or OCR for documents without extracted text will be provided by the producing party for every record, including for scanned hard copy documents as described above. The full text of each electronic document shall be extracted or OCRed ("Extracted Text") and produced in a text file. Extracted text will not be provided for electronic documents that have been redacted because the extracted text

would reveal the redacted information. Instead, these files will be OCRed to capture the visible text and those results will be provided in lieu of the original extracted text.

f. The Extracted Text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a foreign language) and shall be named with a unique Bates Number (e.g., the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

g. The Parties are not obligated to populate manually any of the metadata fields set forth below if such fields cannot be reasonably extracted from a document. The parties reserve the right to request additional metadata fields should the party show good cause for the necessity of such additional metadata.

h. The parties agree that this Stipulated Order does not preclude a party from requesting the production of documents by inspection of hard copy documents as they are kept in the usual course of business.

i. Confidentiality: The parties have entered into a protective order in this matter which specifies various confidentiality treatment levels for use in this case. ECF No. 56. The confidentiality treatment level for any item will be provided with the created data for that item, in the field entitled "Confidentiality Treatment." For items with no confidentiality requirements, the field will be left blank. The producing party will brand any confidentiality endorsement in a corner on any PDFs or TIFF images representing the produced item. Those endorsements must be in a consistent font type and size and must not obscure any part of the underlying image or Bates number.

***Principles applicable to ESI.***

j. The parties agree that, except as provided herein or otherwise agreed upon by the parties, ESI shall be produced in PDF, native, or single-page Group IV TIFF, 300-dpi format. Such productions shall be accompanied by Opticon and IPRO load files (or other generally acceptable load file format) that contain metadata fields identifying natural document breaks and also includes companion OCT and/or extracted text files, if available. Each

|   |   |   |
|---|---|---|
| | | PDF, native, or TIFF file shall be given a unique file name that matches the Bates number label on the first page of the document. |
| | k. | Documents with hidden content, such as spreadsheets or presentations, shall be produced in native with all content unhidden and notes displayed. If it must be produced in TIFF, it shall be processed with all content unhidden and any notes displayed on the TIFF image. The Parties reserve all rights to meet and confer to request the production of documents with hidden content in an alternate format. |
| | l. | If a document is more than one page, the parties shall make reasonable efforts, consistent with reasonable industry practices, to provide the logical unitization of the document, any attachments, and/or affixed notes as they exist in the original document. |
| | m. | The Parties agree to produce documents using the Pacific Standard Time Zone. |
| | n. | A producing party may de-duplicate electronic documents and is not obligated to extract or produce entirely duplicate ESI. Removal of duplicate documents shall only be done on either (1) exact duplicate documents based on MD5 hash values across custodians, or (2) emails that contain the same content, sender, and recipients as other messages despite not having matching MD5 hash values such that they would be identified as "email duplicate spare messages" by the Relativity document review platform or an equivalent designation in an alternative document review platform.  However, family relationships will be maintained and only exact email family groups, including email duplicate spare messages or equivalents, will be de-duplicated.  No email attachment will be de-duplicated against a loose file.  Global de-duplication across the entire collection will be employed.  This eliminates duplicates to retain only one copy of each document per case.  For example, if an identical document resides with three custodians, only the first custodian's copy will be included in the review set.  The custodian field will list each custodian, separated by a semicolon, who was a source of that document, or alternatively, the Producing Party may utilize a separate "All Custodians" field which identifies all custodians of the subject document. |

o. The parties agree that the fields of metadata in Exhibit A shall be preserved, collected, and produced, only to the extent it is reasonably accessible and non-privileged. This list of metadata is intended to be flexible and may be changed by agreement of the parties, particularly in light of advances and changes in technology, vendor, and business practices.

p. Unless otherwise agreed to by the parties, files that are not easily converted to image format, such as spreadsheet, database, and audio or video, will be produced in native format, or near-native format. If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents.

q. The original native files, or near-native files as appropriate, should be produced in addition to a single-page TIFF placeholder for each document. The placeholder should be endorsed with "Native Format Document," and endorsed with the Bates number assigned to that document. The produced native file should be named with the Bates number assigned to that document. Any confidentiality or other designations stamped on the placeholder for such a document shall apply to the entire native file and its contents. For documents whose native format is MS PowerPoint, the original native files shall be produced with any comments and color preserved. The produced native file should be named with the beginning Bates numbers assigned to that document. The parties will meet and confer upon the other types of files that are not easily converted to image format and will, therefore, be produced in native format.

r. The relative path to the native file should be included in the delimited text file and the produced files should be organized in a "NATIVES" folder in the production media.

s. All documents, native ESI, photographs, and video shall be produced in color if stored in color. Documents produced in color shall be produced as JPEG images, 300 dpi or higher and 24-bit color depth, if available. Except as already specified herein, the parties agree to make a good faith effort to comply with reasonable and specific requests for the production of higher resolution or color images. Nothing in this order shall preclude a producing party from objecting to such requests as unreasonable in number, timing or

scope, provided that a producing party shall not object if the document as originally produced is illegible or difficult to read. The producing party shall have the option of responding by producing a native-file version of the document. If a dispute arises with regard to requests for higher resolution or color images, the parties will meet and confer in good faith to try to resolve it.

***Principles applicable to hard-copy documents.***

t.  The parties agree that documents existing in hard copy form should be produced in single-page Group IV, 300-dpi TIFF format. Each TIFF file will be given a unique file name that matches the Bates number label on the corresponding page. The accompanying load file should contain, at a minimum, (a) ProdBeg, (b) ProdEnd, and (c) custodian name, to the extent available. The full extracted or OCR text should be included and produced at a document level and located in the same folder as their respective document image or OCR/TEXT folder.

u.  The parties agree that documents existing in hard copy form may be produced in searchable PDF if the parameters in paragraph (t) are unduly burdensome and not proportionate to the needs of the case. Each PDF file will be given a unique file name that matches the Bates number label on the first page of the document.

v.  The parties will undertake their best efforts to unitize documents correctly. In scanning hard-copy documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized).

w.  Text of hard-copy documents shall be extracted using industry-standard OCR technology. Text files shall not contain the redacted portions of the documents.

x.  Responsive hard copy documents shall not be eliminated as duplicates of responsive ESI.

**8)  DOCUMENTS PROTECTED FROM DISCOVERY**

The obligation to provide a log of privileged or work product materials presumptively shall not apply to: (a) Work product created by Outside Counsel Attorney or Party for the Parties regarding this litigation created after the filing of the first complaint; (b) Internal communications with Outside Counsel

for the Parties regarding this litigation created after the filing of the first complaint; (c) Communications between Outside Counsel and the party they represent regarding this litigation after the filing of the first complaint. The parties agree to confer regarding other categories of information that may be excluded from logging requirements.

The Parties agree that, except as provided herein regarding presumptively privileged documents and ESI, they will produce privilege logs and will exchange information regarding claims of privilege and/or work product protection within 30 days of a production.

For documents and ESI that have been withheld or redacted as privileged, the withholding or redacting Party shall provide a privilege log of such documents and ESI, providing the following objective metadata to the extent it is reasonably available: date, author(s), custodian(s), recipient(s), file type, and subject (to the extent the subject does not reveal protected content). In addition, the withholding or redacting Party shall also provide for each document on their privilege log an identifier for the privilege being asserted (e.g., "ACP" for attorney client privilege, "WP" for work product, or other descriptions as necessary based on the specific privilege being claimed), the document's Bates numbers or other unique identifier, and a description of the nature of the privileged or protected material is such a way that will enable other parties to assess the claim.

The parties reserve the right to request additional information regarding individual documents on the privilege log.

a.  **Limitations and Non-Waiver**

Pursuant to Fed. R. Evid. 502, the inadvertent disclosure or production of privileged or work-product-protected documents, electronically stored information, or other information, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding if the privilege holder took reasonable steps to prevent the disclosure or production. This Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502. Nothing contained within this paragraph is intended to or shall serve to limit a party's right to conduct a review of documents, ESI, or information (including metadata) for relevance, responsiveness, confidentiality, and/or segregation of privileged and/or protected information before production.

/ / /

**9)**     **MODIFICATIONS**

    a.     Any practice or procedure set forth herein may be varied by agreement of the Parties, and first will be confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical exchange of electronic data or other covered discovery materials.

    b.     Should any Party subsequently determine in good faith that it cannot proceed as required by this Order or that the Order requires modification, the Parties will meet and confer to resolve any dispute before seeking Court intervention.

DATED this 29th day of July, 2024.

| | |
|---|---|
| **THE BOURASSA LAW GROUP** | **SCHNITZER JOHNSON & WATSON, CTD.** |
| By: */s/ Jennifer A. Fornetti*<br>MARK J. BOURASSA, ESQ. (NBN 7999)<br>JENNIFER A. FORNETTI, ESQ. (NBN 7644)<br>VALERIE S. GRAY, ESQ. (NBN 14716)<br>2350 W Charleston Blvd, Suite 100<br>Las Vegas, Nevada 89102<br>*Co-Interim Counsel for Plaintiffs and the Class* | By: */s/ L. Renee Green*<br>GARY E. SCHNITZER, ESQ. (NBN 395)<br>L. RENEE GREEN, ESQ. (NBN 12755)<br>8985 S. Eastern Ave., Ste. 200<br>Las Vegas NV 89123<br>*Attorneys for Defendant* |
| **LYNCH CARPENTER LLP** | **LADAH LAW FIRM** |
| By: */s/ Nicholas A. Colella*<br>NICHOLAS A. COLELLA (*pro hac vice*)<br>1133 Penn Avenue, 5th Floor<br>Pittsburgh, PA 15222<br>*Co-Interim Counsel for Plaintiffs and the Class* | By: */s/ Ramzy P. Ladah*<br>RAMZY P. LADAH<br>517 S. Third Street<br>Las Vegas, NV 89101<br>*Plaintiffs' Steering Committee Counsel* |
| **STRAUSS BORRELLI PLLC** | **RICHARD HARRIS LAW FIRM** |
| By: */s/ Raina Borrelli*<br>RAINA BORRELLI (*pro hac vice*)<br>980 N. Michigan Ave., Suite 1610<br>Chicago, Illinois<br>*Plaintiffs' Steering Committee Counsel* | By: */s/ Jonathan B. Lee*<br>CLARK SEEGMILLER<br>JONATHAN B. LEE<br>801 S. Fourth Street<br>Las Vegas, NV 89101<br>*Counsel for Plaintiff Aurora* |

**IT IS SO ORDERED** that the parties' stipulated protocol on the discovery of electronically stored information (ECF No. 57) is GRANTED.

_____
UNITED STATES MAGISTRATE JUDGE

DATED: 7/30/ 2024

CASE NO.:  2:23-cv-00824-RFB-DJA

## EXHIBIT A

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| DOCID/IMAGEFILENAME | Unique identifier |
| PRODBEG | First Page document number |
| PRODEND | Last Page document number |
| PRODBEGATT | First Page of Family group range number |
| PRODENDATT | Last Page of Family group range number |
| CUSTODIAN | All record owners of the file from whom the data was collected, including copies identified during global deduplication |
| HASH VALUE | A unique, identifying number of a file calculated by a hash algorithm, e.g. MD5. |
| FROM | Email Sender |
| TO | Email Recipient(s) |
| CC | Email Recipient(s) that were Copied |
| BCC | Email Recipient(s) that were Blind Copied |
| SUBJECT | Subject line of emails |
| THREADID | Identification of email threads |
| PARENTID | Identification of email parent relationships |
| FILENAME | Name of file |
| DATESENT | Email sent date |
| TIMESENT | Email sent time |
| DATERECEIVED | Email received date |
| TIMERECEIVED | Email received time |
| DATESAVED | Save date |

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| TIMESAVED | Save time |
| DATELASTPRINT | Date last printed |
| TIMELASTPRINT | Time last printed |
| FILEEXT | File extension of document |
| AUTHOR | Author information as derived from the properties of the document |
| COMPANY | Company that supplied the ESI in its raw format |
| TITLE | Title from document metadata (if applicable) |
| DATECREATED | Date document was created on non-emails |
| TIMECREATED | Time document was created on non-emails |
| DATEMODIFIED | Last date document was modified on non-emails |
| TIMEMODIFIED | Last time document was modified on non-emails |
| FILESIZE | Size of Native file |
| PGCOUNT | Number of pages in document |
| OCRPATH | Path to extracted text of native file or OCR |
| NATIVELINK | Path to email or native file document (if applicable) |
| ORIGINALPATHFOLDER | Path including filename |

# **CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), I certify that I am an employee of The Bourassa Law Group, and that on this date I caused to be served a true copy of **STIPULATED PROTOCOL ON THE DISCOVERY OF ELECTRONICALLY STORED INFORMATION** on all parties to this action by the method(s) indicated below:

  X    by using the Court's CM/ECF Electronic Notification System addressed to:

Gary E. Schnitzer, Esq.
L. Renee Green, Esq.
KRAVITZ SCHNITZER JOHNSON & WATSON, CTD.
Email:  gschnitzer@ksjattorneys.com
              rgreen@ksjattorneys.com

DATED:  This 29th day of July, 2024.

*/s/ Kylie B. VanderMiller*
Employee of The Bourassa Law Group